LANDIS & SCHICK, APPELLANTS, v. GEORGE WATTS, APPELLEE.

FILED JUNE 11, 1909. No. 15,281.

1. **Evidence: HYPOTHETICAL QUESTIONS.** The rule announced in *Hamblin v. State*, 81 Neb. 148, that, "in propounding hypothetical questions to expert witnesses, it is allowable for each party to the controversy to submit such questions upon the theory of the case contended for by the side propounding them" does not mean that a party propounding hypothetical questions may do so upon a theory at variance with testimony which he himself has given, either in person or through other witnesses whom he has previously introduced.

2. ———: ———. In such a case the questions must be so framed as to fairly reflect the party's theory as shown by the ·facts admitted on proved by him.

3. ———: ———. And where the party's own evidence corroborates evidence which has been introduced by the other party to the action, such questions should fairly reflect all of the facts so admitted or proved by both sides.

REHEARING of case reported in 82 Neb. 359. *Judgment of district court reversed.*

FAWCETT, J.

This case is before us on rehearing. See 82 Neb. 359. Plaintiffs declared upon an account stated for a balance due as attorneys' fees in a case tried in the district court for Seward county. The answer denies that there was any account stated, and sets out other matter which it is not necessary to consider. Plaintiffs having declared

upon an account stated, all that was necessary for the defendant to do was to meet that claim. Failing to establish the account stated, plaintiffs' action would fail, regardless of whether their claim for attorneys' fees was reasonable or not.

On the trial Mr. Landis and Mr. Schick, composing the firm of Landis & Schick, attorneys at law, both testified that they were employed generally by the defendant in an action for personal injuries, which had been brought against defendant in the district court for Seward county by one Weinbar, for $12,700 damages. Defendant had already employed two other lawyers, who should be designated as chief counsel in the case. For reasons of his own, defendant saw fit to employ plaintiffs to assist the attorneys who had been already employed. Mr. Landis testified that as soon as defendant employed them he went to the clerk's office for the files, and instructed the clerk to enter plaintiffs' names on the docket as counsel; that shortly after returning to his office with the files, "Mr. Carey (one of the counsel above referred to) and Mr. Watts came in, and they suggested to me that it might be better if I should not appear of record in the case, but hang around on the side, but to go ahead and work on the case and see what could be found out, and then the other side of the case would not know that we were in the case. I informed Mr. Carey and Mr. Watts that we were not detectives, but lawyers, and that we would either be in or out of the case. If they wanted us in the case we would go in and do the best we could, would do our utmost, but we would not act as detectives, and when it was found out that we would not act as detectives, Mr. Watts said all right, and Mr. Carey said all right." This testimony by Mr. Landis is not contradicted by either Mr. Watts or Mr. Carey. Mr. Landis and Mr. Schick both testified that after they were retained, and prior to the trial, defendant came to their office on a number of occasions and spent a good deal of time going over the case, talking about

the witnesses and what they would testify to; that they went over the case very fully with the defendant and with defendant's son; that they spent a large amount of time examining the law of personal injury cases; that they examined all of the cases in this court, borrowed Labatt, on Master and Servant, a two volume work, and made a careful examination of that; that they had conferences at different times with senior counsel in the case, and discussed with them the preparation of instructions and the advisability of moving for a directed verdict when plaintiff rested. The evidence shows that plaintiffs were very active and energetic in the case from the time of their employment until the case was finally brought to a successful issue upon the trial. Defendant seeks to escape responsibility for all this by claiming that plaintiffs were not employed for any such purpose, and by the expert witnesses introduced seeks to escape liability for anything done by plaintiffs except during the two days of actual trial in court, the time when, it seems to us, their services would have been of the least value to defendant. Defendant had two older and more experienced lawyers to try the case, and it is doubtful whether plaintiffs could render them very much assistance in the court room during the trial, but such as they could render was rendered by Mr. Landis, the senior member of plaintiffs' firm. The evidence fairly indicates that the plaintiffs were employed because they were young and active, and would be apt to be energetic in getting the witnesses together, the evidence in shape, and in preparing for the trial of the important case then about to be tried. At any rate, the uncontradicted evidence shows that they performed those services, and there is not even an attempt at proof in the record that the senior counsel in the case ever did a thing along those lines, but relied entirely upon the work of plaintiffs. After plaintiffs had testified to all of these facts, partly in chief and largely in rebuttal, defendant was called to

46

the stand on surrebuttal. This testimony by defendant strongly corroborates everything testified to by plaintiffs. He does not deny any of their testimony, but strongly corroborates them.

The evidence of Mr. Schick, and of defendant himself, shows that some time subsequent to the trial defendant called at plaintiffs' office, and inquired what their charge was going to be for services in that case. Mr. Landis being absent, Mr. Schick told him that they had not considered the matter yet, but that when Mr. Landis returned they would take the matter up and would advise him. On Mr. Landis' return plaintiffs decided upon the amount they proposed to charge for their services, and on December 4, 1905, wrote defendant: "You were inquiring of us what our fees would be, and we write you about the same. Our fees will be $225. A prompt remittance of the same will be appreciated." Defendant received the letter, and on December 15 called at the office of plaintiffs. Defendant testified that when he called at their office he told them that their fee was excessive, and that he would not pay it; that he would pay them $100 and no more, and that that was $50 more than their services had been worth to him, and positively denies that there was any agreement to pay the $225 by paying $100 in cash and the remainder by March 1 following. Plaintiffs both testify that there was no such talk on the part of defendant; that there was no serious disagreement between them; that, while defendant said their charge was high, yet he agreed to it, and stated that he would pay them the whole amount that day if they desired, but if they would accept $100 then and wait for the remainder until March 1, at which time he expected to be getting in some money, it would be quite an accommodation to him, and that they agreed to that proposition. Mr. Landis testified that they gave him a receipt, specifying as follows: "Received $100 in part payment on the Watts-Weinbar settlement of $225." Defendant admits that they gave him a receipt for the $100, but claims that the

receipt is lost. If, as testified by him, they were attempt-
ing to hold him up for an excessive fee, and he was pay-
ing them $100 and stating to them that that was all he
ever intended to pay, it seems incredible that he would
have accepted, without protest, a receipt which, upon its
face, declared that it was a receipt for $100 in part pay-
ment of a settlement of $225, and that Mr. Watts would
have failed to carefully preserve his receipt. If it had
been preserved and produced in evidence, it would have
furnished strong written proof of the account stated.    In
this condition of the record could defendant be permitted
to introduce testimony as to the reasonable value of the
services performed by plaintiffs? We think not.    In
the first paragraph of the syllabus in our former opinion
we say: "If the evidence relative to a material fact is
conflicting, any collateral fact or circumstance tending
in a reasonable degree to establish the probability or im-
probability of the disputed fact is relevant and properly
admitted, although it may not tend directly to prove any
issue in the case." In a certain class of cases this would
be the law, but, as applied to the facts in the case at bar,
we feel that that rule is not applicable. If the testimony
for and against the account stated had been largely cir-
cumstantial, or enshrouded in doubt, or ambiguous, then
the introduction of collateral facts or circumstances might
have been permissible; but here it is not a question of
doubt or uncertainty. It was a square question of veracity.
The two plaintiffs had sworn positively to the account.
They had shown that a paper had been given by them to
defendant, stating the account in express terms. De-
fendant had sworn positively that no such an account
stated had been agreed upon. Under such circumstances
we do not think it was permissible for the defendant to
offer testimony as to the value of the services which plain-
tiffs had performed.

But, conceding that the testimony attempted to be
introduced is within the rule announced in the cases cited
in our former opinion, and that defendant had a right to

introduce testimony as to the reasonable value of the
services as a collateral fact or circumstance tending to
establish the probability or improbability of the disputed
fact, viz., the account stated, the evidence offered to prove
that fact was, under the settled rule in this state, clearly
inadmissible. Three lawyers were placed upon the stand
by defendant, and the same hypothetical question was
propounded to each. It is only necessary to refer to one,
as that is similar to the other two. Mr. J. J. Thomas
was introduced as a witness, and we have the following:
"Q. Mr. Thomas, where a person has been sued for dam-
ages in a case where the plaintiff claims damages in the
sum of $12,700 for injuries sustained caused by the fall-
ing in of a vault, claiming to have been constructed under
the supervision of the defendant, and the falling in being
caused by his negligence, and where said defendant em-
ployed a lawyer to assist other counsel in the trial of the
case, and where the counsel employed is present during
two days in court, and assists at the trial of the case
during those two days, and makes a speech to the jury,
and where there is no agreement made as to the value of
the services of said counsel, what, in your opinion, would
such services be worth per day? A. I would like to ask
another element there before I would answer that hypo-
thetical question. Who is responsible in charge of the
case where the services involved are performed? As to
who is responsible for the case, or is assisting. I think
it would make some difference as to who is responsible
for trial of the case. Q. Add to the question: Where the
employment is to assist other counsel who are employed
and have charge of the case. (These questions were
properly objected to.) A. Well, if the services that you
refer to were simply assisting the other attorney, who
was the attorney in charge and had the responsibility
of taking care of the case, and he was simply assisting
in the trial, would simply go and help try it in court, I
would consider $20 to $25 per day fair compensation."
On cross-examination he testified that in the answer

given he had not taken into consideration the fact that counsel who assisted had spent considerable time in preparation of the case before trial, nor the fact whether counsel had examined or talked with the witnesses before the trial, making preparations for the same; but says: "I have simply taken into consideration the services performed in the court room." And in answer to another question, he says: "If I prepare a case and prepare the pleadings and look up the law and investigate and get ready for trial, in nearly all cases of default it takes a great deal more time to do what I do outside of the court room than what I do in. I assumed that there was somebody else had done that. I was answering a case where I was just called in to help try it in court." He further stated that in his answer he was just assuming that the counsel had nothing to do excepting the mere assistance in the courtroom, and that he had disregarded whatever might have occurred outside of the courtroom. It is apparent, therefore, that the hypothetical questions propounded to the three witnesses simply submitted to them a partial statement, and that the least valuable, of the services that were performed by the plaintiffs in that case.

At the time this testimony was offered Mr. Landis had testified to the general employment of plaintiffs in the suit above referred to; that he had consulted with senior counsel in the case over the pleadings; that he had assisted in the two days' trial of the case; that he had looked up testimony in the case, making a trip to Goehner for that purpose; that after the arrival of the witnesses and before the trial he had talked with them; that in Mr. Carey's office he had assisted in the discussion of the law and preparation of the instructions; and he and Mr. Schick had both testified as to their interview with defendant at the time of the agreement as to the account stated. Mr. Landis had also testified as to the contents of the receipt given to defendant at that time. Defendant himself had testified to the employment of plaintiffs;

that the suit in which he employed them was a damage suit for $12,700; that he was successful in that suit; that he employed them "to assist in the case; to watch the case along, and if there is anything to do, to help, to assist"; that they were "to watch all the business, in fact it was not stated, it was not singled out, to watch the thing along, to see if it went all right, and to help them (senior counsel) if they needed it"; that he "always thought that sometimes there might be a loophole left, and I didn't want it to happen that way"; that he paid Mr. Sloan $300 and Mr. Carey $200 in that case; that Mr. Landis had examined him in regard to the facts in the case, had asked him a good many questions in making preparation for the trial, when neither Mr. Carey nor Mr. Sloan was present; that defendant's son was with him, and that Mr. Landis might have examined him; that at the time he paid plaintiffs $100 they gave him a receipt; that that receipt was not a receipt in full; that they accepted the $100 on the settlement, but not in full payment; that he had lost the receipt.

The question as to what should be contained in a hypothetical question was first considered by this court in *O'Hara v. Wells,* 14 Neb. 403; again in *Morrill v. Tegarden,* 19 Neb. 534. The question was again considered and the two cases above noted cited in *Burgo v. State,* 26 Neb. 639. In that case we said: "The necessity that the questions shall fairly reflect the facts proved or admitted, where it is sought to show insanity as an excuse for crime, is apparent. The plea is in the nature of confession and avoidance. The avoidance, the insanity, is to be shown by the testimony. How can an expert give an intelligible opinion upon that point, or one that the jury would be justified in acting upon, unless the inquiry reflects the proof on that question? There must be a fair statement of the case to render the answer of any value whatever, as a partial statement, or one founded on mere fiction, would not fail to mislead the jury and probably cause a miscarriage of justice." In the syllabus in that

case we said "Where the opinion of an expert is sought upon the question of the insanity of the accused, the hypothetical question to such expert must be so framed as to fairly reflect the facts admitted or proved by other witnesses." In the syllabus in *Morrill v. Tegarden, supra,* we said: "If hypothetical questions are resorted to in the examination of expert witnesses, they must be so framed as to fairly reflect facts, either admitted or proved by other witnesses."

It is suggested that, "in propounding hypothetical questions to expert witnesses, it is allowable for each party to the controversy to submit such questions upon the theory of the case contended for by the side propounding them. A question is not improper simply because it includes only a part of the facts testified to. If facts are testified to which are not believed to be true, or which are believed to be immaterial to the issue, there is no rule of law requiring that they be included in the question." *Hamblin v. State,* 81 Neb. 148. But that does not mean that a party propounding hypothetical questions may propound them upon a theory at variance with testimony which he himself has given, either in person or through other witnesses whom he has previously introduced. In the case at bar, as above outlined, defendant himself had testified to a number of material facts as to the services performed by plaintiffs, which were completely at variance with his so-called theory that they were only employed to assist in the trial of the case in court. It will not do to say that defendant could introduce expert witnesses and propound to them hypothetical questions upon the theory that they had only been employed for a limited purpose, when he had already testified generally that he had employed them "to assist in the case; to watch the case along, and if there is anything to do, to help, to assist; they were to watch all the business, in fact it was not stated, it was not singled out, to watch the thing along, to see if it went all right, and to help them (senior counsel) if they needed it; I always thought

that sometimes there might be a loophole left, and I didn't want it to happen that way"; that Mr. Landis had examined him in regard to the facts of the case and asked him a good many questions in making preparation for the trial, when neither of senior counsel were present; that on at least one occasion defendant's son was with him, and that Mr. Landis might have examined him; that at the time he paid plaintiffs $100 they gave him a receipt; that the receipt was not a receipt in full; that they accepted the $100 on the settlement, but not in full payment. What did defendant mean when he testified that they were "to watch all the business, in fact it was not stated, it was not singled out, to watch the thing along"? This testimony could not have referred to the two days' trial, and when he said "to watch all the business, in fact it was not stated, it was not singled out," it is clear that he meant just what Mr. Landis had testified to, viz., that they were employed generally to enter upon the case and see to its preparation before the trial, as well as to assist in court. Hence, these matters should have been fairly reflected in the hypothetical question; and, it appearing that defendant's own testimony corroborated the testimony of Mr. Landis, as above set out, the hypothetical questions should have fairly reflected the facts as shown by both witnesses. The hypothetical questions propounded to the three expert witnesses introduced by the defendant, being incomplete and unfair in their statement of the facts in relation to plaintiffs' services, as shown by the testimony of defendant himself, to say nothing of the other witnesses who had previously testified in the case, the overruling of plaintiff's objections thereto was reversible error.

For the reasons above stated, our former judgment is vacated, the judgment of the district court reversed and the cause remanded for further proceedings in harmony herewith.

                                        REVERSED.

Root, J., dissenting.

I cannot agree to the holding in this case. The opinion holds that evidence of collateral facts is improper, if the record, minus such evidence, presents a question of the veracity of witnesses, and thereby it seems to me discredits every other decision of this court upon that point, notably *Blomgren v. Anderson*, 48 Neb. 240; *Farmers State Bank v. Yenney*, 73 Neb. 338; *Shepherd v. Lincoln Traction Co.* 79 Neb. 834. The fact that no authority other than the opinion is cited to sustain this proposition leads one to surmise that there is neither precedent nor authority to sustain the principle announced. Moreover, the hypothetical questions fairly reflect defendant's theory of the scope of plaintiff's employment, and therefore the basis upon which he would consider himself obligated to pay, and might shed some light upon the improbability of an agreement on his part to pay them a fee in excess of that paid to experienced counsel in the case.

The opinion commits the court to holding that, where there are two conflicting theories, a hypothetical question may not be based upon facts relevant to one theory unless it includes undisputed evidence pertinent to the other, whereas the rule is otherwise. *Kiekhoefer v. Hidershide,* 113 Wis. 280; 2 Elliott, Evidence, sec. 1119; 1 Wigmore, Evidence, sec. 681. Defendant's testimony, fairly considered, amounts to this: That he employed the plaintiff Landis, not Landis and Schick, and told him: "You won't have to hunt up any testimony or anything of that kind, but watch along, and, if you are wanted to do anything, to do it." That plaintiffs were not requested to do anything, but merely appeared in court at the time the case was tried, and Mr. Landis made an argument to the jury.

The objection that the questions did not fairly reflect the testimony was also too general to predicate error upon the court's ruling. Mr. Commissioner Irvine, speaking for this court in *Chicago, R. I. & P. R. Co. v. Archer,* 46

Neb. 907, wherein this subject was considered, said: "We do not think that the objections that no foundation had been laid for the question, and that the question was not properly framed, are sufficient to suggest the defects complained of." Counsel should have directed the court's attention to the vital undisputed evidence that they now claim was omitted from the hypothetical questions. A trial court ought not to be required to retain in mind and apply to hypothetical questions all of the relevant evidence introduced.

The jurors were instructed that, if they found that an account had been stated between the parties, the value of the services rendered, whether more or less than the amount agreed upon, would be immaterial. All of the facts were before the jury, together with plaintiffs' testimony that their services were worth $225 and it is highly improbable that the result would have been otherwise had the objections been sustained.

The record does not justify a reversal of the judgment of the district court.

LETTON, J., concurs in this dissent.