TERRY L. NICKAL, APPELLANT, V.
DANIEL L. PHINNEY, APPELLEE.

298 N.W.2d 360

Filed November 7, 1980. No. 43008.

Dennis M. Coll and John W. Ballew, Jr., of Raymond, Olsen & Coll, P.C., for appellant.

Holtorf, Kovarik, Nuttleman & Ellison, P.C., for appellee.

Heard before BOSLAUGH and WHITE, JJ., and COLWELL, RIST, and HOWARD, District Judges.

HOWARD, District Judge.

Plaintiff appeals from a verdict and judgment in his favor of $12,613.97, assigning as error that the verdict is inadequate and unresponsive and that the trial court erred in allowing expert testimony as to the speed of plaintiff's motorcycle at the time it struck defendant's pickup truck, which was turning left

across plaintiff's path. In issue was the contributory negligence of plaintiff, the submission of which defense to the jury is not complained of.

A neurosurgeon who examined the plaintiff shortly before trial testified that, in his opinion, based upon electroencephalograms, the last of which showed a normal reading, plaintiff had sustained a contusion of the brain, and had a history consistent with post-traumatic seizures, commonly called epilepsy by laymen; that in most patients this disorder can be controlled by medication; that a personality change in plaintiff for such an injury would not be unexpected; and that he believed plaintiff to remain at some risk for later seizures. He had had no seizures for a year before the examination. An orthopedic surgeon who also examined the plaintiff testified that plaintiff's right hand was injured with the result that the long finger is deformed, making it difficult to pick up very small objects and creating a slight difficulty in making a fist. Plaintiff also sustained a fracture of the jaw, not recognized during the original hospitalization. The jaw was realigned by resection on both sides and wired shut for 2 1/2 months. In this connection, there was testimony that plaintiff's jaw was knocked out of line in a fight while it was still wired shut and had to be realigned with a rubber mallet. Injuries to plaintiff's legs left scars on the right thigh and left leg and a long scar in the left groin. In the pelvis, comminuted fractures occurred on the left side, and probably on the right side also, which, though well healed, appear to have distorted the pelvis slightly through narrowing. At the time of the trial, plaintiff was taking medication three times daily and the neurosurgeon testified that he would not recommend decreasing the dosage until after a seizure-free period of 2 years.

Plaintiff testified that, since the accident, he has had difficulty controlling his temper with his wife, though not with his little boy; that he cannot work

with tools and favors his left hand; that he lacks co-ordination to resume racquetball and handball play; and can lift only half the weight he could before the collision.

At the time of the accident, plaintiff was employed as a truckdriver, earning $4.25 an hour, sometimes working 80 to 110 hours a week. He was unable to return to work for a year. At the time of the trial, he was working for the gas company, earning $6.23 per hour. Medical expenses were claimed in the amount of $12,613.97, which was the amount of the verdict. (Defendant points out that the actual medical expense occasioned by the accident should be somewhat less because medical attention to the jaw after plaintiff's fight was included in the bills.)

It is argued that the verdict, at or near the amount of the medical expenses, is an impossible resolution by the jury if it followed the comparative negligence instruction, and that the verdict is clearly inadequate. The same contentions were made in *Cullinane v. Milder Oil Co.*, 174 Neb. 162, 116 N.W.2d 25 (1962), where this court pointed out that the jury was not obliged to accept the undisputed testimony of the plaintiff or his doctor to the full extent of the damages claimed and that the determination of the amount of the damages after application of the comparative negligence instruction is for the jury. As stated in *Burney v. Ehlers*, 185 Neb. 51, 54, 173 N.W.2d 398, 400 (1970): "A comparison of the negligence of the two parties involved in an accident cannot be easily translated into a mathematical ratio. This court has never adopted a rule that contributory negligence of more than a certain percent will bar recovery as a matter of law. The statute does not contemplate such a rule and we do not believe that the adoption of such a rule would further the administration of justice."

We note the absence of medical testimony that the seizure problem is a permanent one or that, in fact, it will continue for any period of time. We cannot say

that the jury failed to follow the instructions or that the verdict was so inadequate as to require a new trial.

Overruling an objection that the foundation was insufficient and that the question assumed facts not in evidence, the trial court permitted Richard Large, a licensed professional engineer with a degree in mechanical engineering and experience in vehicle accident reconstruction to testify to 50 miles per hour as the minimum speed of the motorcycle at the time of impact. Essentially, the opinion depended upon the force required to impel the pickup into a pivotal motion described by the back wheels as they left slide marks on the pavement. The witness had examined both vehicles while unrepaired, as well as the composition of the pavement. He had been provided with measurements made by the investigating officers, which were shown in the evidence, as well as the photographs. Without objection, he determined the point of the impact, identified the slide marks from photographs, placed the pickup at the point of collision, determined the point of concentration of the greatest force of impact, found the length of both wheel slide marks and the degree of rotation, and demonstrated with a chart in evidence how the pickup moved from the point of impact to its position of rest. From evidence in the record and from his own investigation, he was able to detail the total weight of the pickup and breakdown of the weight of the front and rear axles, the effective wheelbase, the direction of the force of impact into the pickup, the lack of application of brakes to the pickup, the weight of the motorcycle and rider, the surface conditions of the road at the time, the speed of the truck, the coefficient of friction between the tires and pavement, the change of grade, and numerous other items which, with the application of principles of physics and mechanical engineering, would permit a computation.

Appellant complains that the "density" of the slide marks is nowhere shown in the evidence. The photo-

graphs clearly show the nature of the marks, and we agree with the expert's characterization of them as essentially black and essentially continuous from where they start to where the truck came to rest. The expert had examined the paving surface and the truck tires and, in his computation, used a conservative .6 coefficient of friction, although, according to him, the coefficient for the type of surface involved generally ranges upward from .65.

The only other attack made on foundation is the statement in appellant's brief: "The Nebraska Supreme Court has consistently held that skid marks are a necessary factor in an expert's testimony regarding the speed of a vehicle prior to a collision . . . ." This court has not so held. See *Tate v. Borgman*, 167 Neb. 299, 305, 92 N.W.2d 697, 701 (1958), approving this statement in 5 Am. Jur. *Automobiles* § 630 (1936): "Various factors, such as skid marks, distance traveled after impact, *force of impact*, etc. are pertinent in arriving at an estimate of the rate of speed of an automobile." (Emphasis supplied.)

We do not depart from what was said in *Flory v. Holtz*, 176 Neb. 531, 539, 126 N.W.2d 686, 692 (1964): "There is a vast difference between permitting an expert to give an opinion when all of the factors necessary to base an estimate of minimum speed are present and in permitting an estimate of actual speed based on assumptions that have no adequate foundation in the evidence." Here the forces involved are relatively uncomplicated and the necessary factors are not dependent upon assumptions but are present in the evidence.

It follows that the judgment of the District Court must be affirmed.

AFFIRMED.