STATE OF NEBRASKA, APPELLEE, V. HARRIS A. ESLUER, APPELLANT.

340 N.W.2d 152

Filed November 10, 1983. No. 82-743.

Bennett G. Hornstein and Richard H. Hoch, for appellant.

Paul L. Douglas, Attorney General, and Patrick T. O'Brien, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Defendant-appellant, Harris A. Esluer, then sheriff of Otoe County, pursuant to a jury's verdict, was adjudged guilty of intending to deprive the owner of movable property having a value in excess of $1,000 by attempting to take or exercise control over it. The defendant was fined $2,000 and placed on probation for 2 years. In this appeal he claims the trial court erred by (1) receiving evidence improperly characterized as rebuttal in nature; (2) receiving the testimony of a witness not previously identified as required by a discovery agreement; (3) instructing the jury as to a sheriff's statutory duties; and (4) failing to dismiss the information because the evidence was allegedly insufficient to establish guilt. For the reasons discussed hereinafter we find each assignment of error to be without merit, and affirm the judgment of the trial court.

During the course of preparing for trial, a discovery agreement was entered into between defendant's attorney and the Attorney General's office as the prosecutor. The agreement required the State to disclose to defendant's attorney every police report in the State's possession, to make available for interview every witness the State "had any control whatsoever over," and to facilitate any discovery defendant wished.

The State presented evidence in its case in chief to establish, if believed by the jury, that in February of 1982 Karen Neiger was interrogated by Lincoln police after her unsuccessful efforts to sell a strongbox, or vault, containing personal property. The property included watches, jewelry, and silver coins and had a fair market value in excess of $7,000. Neiger initially refused to disclose how she obtained the property, and the Lincoln police took it into their possession. The department inventoried the prop-

erty and notified authorities across the state, including the defendant, in an attempt to locate the owner of the property. These attempts were unsuccessful. Eventually, Neiger confessed to the Lincoln authorities that she had taken the vault from the house of her former roommate, Cheryl Horalek, who lived at Palmyra in Otoe County, Nebraska.

On February 18, 1982, the defendant was asked, in his capacity as Otoe County sheriff, to come to Lincoln to retrieve the property. Defendant drove to Lincoln that night and was informed by Detective Breen of the Lincoln Police Department that Neiger had confessed to taking the property from Horalek. Defendant was given a copy of the police reports, along with the Horalek property. A few days later Neiger called the defendant and asked him whether Horalek was pressing charges. The defendant told Neiger not to worry because she was not in trouble.

On April 12, 1982, Investigator Scott of the Nebraska State Patrol went to Horalek's house to investigate a report that checks drawn on Horalek's account had been forged by Neiger. Scott asked Horalek if she was missing any items Neiger could have taken. Horalek, who was yet unaware of the theft of her vault, thought she might be missing a few items of jewelry. Scott contacted Detective Breen and informed him he might have located the owner of the property recovered from Neiger. After Breen informed Scott that property, along with the substance of Neiger's confession, had been relayed to the defendant, Scott called the Otoe County attorney. Scott was informed by the county attorney that he had never heard of the matter.

Scott then called Horalek and asked if she owned a vault, and to check to see if it was still in her house. Horalek discovered it missing, and Scott advised her to report the matter to the defendant's office. A deputy from defendant's office was dispatched to investigate the matter; he advised Horalek that recovery of the property was not likely. After Horalek

reported these events to Scott, she was told by Scott to report the matter directly to the defendant.

On April 21, 1982, at about 10 p.m., the defendant drove to Horalek's house, asked her to step outside to his car, and then told her that her property had been recovered in a "sting" operation in Lincoln and that she should keep quiet about the matter. As Horalek examined the property returned to her at that time by the defendant, she gave back to him a ring she claimed was not hers. This ring later turned out to be worthless. She also informed the defendant that several rings were missing. The defendant then pulled a ring from under one of the car seats and returned it to her. The next day Scott compared the property against a copy of the Lincoln police inventory and discovered that, while the number of coins returned had been the same as the number inventoried, a valuable diamond ring was missing.

After other investigative efforts failed, State Patrol investigators confronted the defendant with their evidence; the defendant claimed that the property had spilled in his car and that the missing ring must still be there. A search of the car did not uncover it.

On May 15, 1982, Scott was called to the defendant's home. Upon his arrival the defendant's wife, Bernice Esluer, gave Scott the missing ring. She stated that she found it on the floor of her husband's car while she was cleaning it that evening.

After the State rested its case in chief, the defendant testified that when he received the property from Breen, he was told it was from Horalek's home. He also testified that Breen told him he would send a followup report, which defendant never received. The defendant further testified that he had not returned the property to Horalek until she reported the theft, because he thought the property did not rightfully belong to her. On his return to his home after receiving the property from the Lincoln

police, the defendant fell while leaving his car and injured his back. On Friday, the 19th, the defendant went to work, but claimed to have been away from work on Saturday and Sunday. On the following Monday the defendant returned to work and attended a coin club meeting that night. After the meeting he returned to his office and removed the Horalek property from his car and placed it in his desk. A few days later the defendant examined the coins and took the jewelry to a jeweler for an appraisal. On cross-examination defendant denied there were any particularly "rare coins" among the Horalek property he examined. He acknowledged, however, that the "1921 Peace Dollar" is a rare coin. After defendant had examined the Horalek property and had obtained an appraisal of it, he placed it in a safe in his office, not in the evidence locker. He also claimed to have told one of his deputies, Tom Frudiker, about the property in late March or early April.

The defendant also testified that he first became aware of Horalek's theft report on April 21. He denied ever talking to Horalek on the phone, but claimed he gained the knowledge from reading Deputy Phillips' report. After learning of the Horalek theft report defendant drove to Horalek's home on the evening of the 21st. He admitted implying to Horalek that there was a sting operation in which this property was recovered. He claimed that after he gave the evidence bag containing the rings to Horalek, some of them spilled. He stated that the brass ring disclaimed by Horalek was not with the rings he took to have appraised, was not in the package he took to Horalek, and that he had never seen that ring prior to that night. He attributed his inaction on the Horalek case to a heavy workload and the unusual number of serious crimes committed in his jurisdiction.

After the defendant rested, the State elicited testimony from Lincoln police officer Childers, who

originally took the property into evidence, that there was a 1921 peace dollar among the property he inventoried. When he examined the property at the State Patrol office prior to trial, the peace dollar was missing, and a heavily worn silver dollar, which was not among those he had previously inventoried, had been substituted. James LaFevre, another Lincoln police officer and professional coin dealer, placed the value of the peace dollar at $120 to $130. Although the name of Officer Childers had been disclosed to defendant, Officer LaFevre had not been disclosed as a witness.

Defendant first argues that the evidence of his replacing a valuable coin with a less valuable one was evidence which should have been introduced in the State's case in chief. He contends that the evidence was therefore not properly rebuttal in nature, and the trial court erred in receiving it as such.

In *State v. Miller*, 213 Neb. 274, 328 N.W.2d 769 (1983), we defined proper rebuttal testimony in a criminal prosecution as " ' "any testimony, otherwise competent, which tends to dispute the testimony offered on behalf of the accused as to a material fact . . . ." ' " *Id*. at 278, 328 N.W.2d at 772. Therein, we permitted the State to offer the testimony of an accident reconstructionist after the defendant had introduced testimony as to speed in a prosecution for motor vehicle homicide. Here, defendant's testimony that a particular coin was not among those initially delivered to him by the Lincoln police was certainly a fact material to the charge of intentionally attempting to deprive the owner of movable property. The evidence in question was competent, and disputed defendant's claim in regard to that material fact; it was therefore properly received as rebuttal evidence. Defendant's first assignment of error is without merit.

Defendant also argues the trial court erred in permitting Officer LaFevre to testify, in violation of the State's discovery agreement.

Assuming, but not deciding, that the language of the particular discovery agreement involved overrides the general rule that rebuttal witnesses need not be endorsed on the information, *State v. Pratt*, 197 Neb. 382, 249 N.W.2d 495 (1977), we confront another rule. The failure to endorse the names of the State's witnesses on the information is not grounds for reversal in the absence of a showing of prejudice. *State v. Journey*, 201 Neb. 607, 271 N.W.2d 320 (1978); *State v. Keith*, 189 Neb. 536, 203 N.W.2d 500 (1973).

Firstly, as will be seen from the discussion which follows in connection with the third and fourth assignments of error, there was more than ample evidence to establish defendant's guilt without the testimony concerning the coin substitution. Secondly, it was Officer Childers who testified to the substitution; his name was revealed to the defendant. Under these circumstances defendant cannot show he was prejudiced by Officer LaFevre's testimony as to the value of the coin. Consequently, defendant fails to sustain his second assignment of error.

Defendant next objects to the court's instruction No. 6, which reads: "The statutes of the State of Nebraska in full force and effect at the time alleged in the Information provide in substance as follows: 'It shall be the duty of the sheriff, by himself or deputy, to ferret out crime, to apprehend and arrest all criminals, and insofar as it is within his power, to secure evidence of all crimes committed in his county and present the same to the county attorney, and to perform all other duties pertaining to the office of sheriff.' " This jury instruction embodies the language of Neb. Rev. Stat. § 23-1710 (Reissue 1977), which outlines the duties of the sheriff.

The defendant rightly contends that he was not on trial for neglecting his duties as sheriff of Otoe County, and argues further that the jury could have convicted him of attempted theft merely because of violation of his statutory duties.

The law governing this issue is found in *State v. Bartholomew*, 212 Neb. 270, 322 N.W.2d 432 (1982), in which we held that all the instructions must be read together, and if the instructions taken as a whole correctly state the law, are not misleading, and adequately cover the issues, there is no prejudicial error. The trial court properly instructed the jury in another instruction of the elements of the crime charged. While it might have been better practice for the trial court to preface instruction No. 6 with a statement that the defendant was not on trial for neglecting his statutory duties, an instruction in regard to his duties was nonetheless relevant to the question of defendant's intent. The crime of attempted theft requires a finding of intent. The delivery of stolen property and information as to the confession of the suspect to a private citizen who later fails to report to the county attorney need not lead to a strong inference that the citizen intended to deprive the true owner of that property. However, the delivery of those items to a sheriff charged with the duty of informing the county attorney of crimes in the sheriff's county, along with stating to the suspect not to worry and to keep quiet, is highly probative of the intent to deprive the true owner of the property delivered to the sheriff. Defendant's third assignment of error is also without substance.

Defendant's fourth assignment of error is equally spurious. His main contention is that the State failed to sustain its burden of proving the value of the property was over $1,000. He bases this contention on the testimony of the State's witness, Fred Wilson, that the missing ring, later found by the defendant's wife, had a replacement value of $1,800 and a fair market value of half that amount. The defendant ignores the testimony of LaFevre concerning the $120 to $130 value of the peace dollar. Moreover, defendant was not specifically charged with the attempted theft of only the ring, or only the ring and coin. The charge dealt generally with

property belonging to Cheryl Horalek. The jury was given uncontradicted evidence that the fair market value of all the jewelry and watches was around half the replacement value of $14,722.97.

The rule of law governing this court's review of the sufficiency of the evidence to support a jury verdict is found in *State v. Evans, ante* p. 433, 338 N.W.2d 788 (1983), which states that the verdict must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. The issue of the value of the property the defendant was convicted of attempting to steal was for the jury, and there is ample evidence to support its finding.

AFFIRMED.