**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James H. NORMILE,**
**Defendant-Appellant.**

No. 78–5372.

United States Court of Appeals,
Fifth Circuit.

Jan. 12, 1979.

C. W. Meadows, Jr., J. Gregory Jackson, Dallas, Tex., for defendant-appellant.

John H. Hannah, Jr., U. S. Atty., T. J. Baynham, Jr., William E. Gordon, Jr., Asst. U. S. Attys., Tyler, Tex., for plaintiff-appellee.

Before GEWIN, GEE and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Convicted of income tax evasion for 1972[1] on the basis of a bank deposits-cash expenditures analysis, James H. Normile, who sold auto parts under the trade name Barney's Auto Supply in Denton, Texas, contends that a proper foundation for use of this indirect method of proof was not laid because the government failed to establish the opening cash balance and that various other prejudicial errors occurred during his trial. Because we perceive no such errors, we affirm.

We have recently reviewed the prerequisites for circumstantial proof of tax evasion in *United States v. Boulet,* 5 Cir. 1978, 577 F.2d 1165, and it would be supererogatory to repeat what we said there. Among other duties, the government is required to conduct a full and adequate investigation in order to establish with reasonable certainty the amount of cash the taxpayer had in his possession at the start of the taxable period and the opening balance in his bank accounts. The defendant's first objection is that the government failed to conduct such an inquiry here in that it did not discover two bank accounts that in fact existed.

At the start of the investigation, Normile was approached by IRS Special Agent David Black who interviewed him extensively about his financial affairs. During this interview, Normile stated that he seldom kept more than about $100 on hand in cash, did not have a safety deposit box, and had checking or savings accounts at specified banks only. He also denied receiving any income from non-taxable sources during 1972. The government examined every account Normile disclosed; this included checking accounts at Denton County National Bank, and savings accounts and certificates of deposit at North Texas Savings and Loan, Denton; Farmers and Merchants Bank of Krum; Denton County National Bank; and First State Bank of Denton. When, during the trial, for the first time

1. The defendant was convicted of violating 26 U.S.C. § 7201 and was sentenced to three years imprisonment, to become eligible for parole upon serving a period of nine weeks pursuant to 18 U.S.C. § 4205(b)(1). The defendant was acquitted on similar charges for the years 1973 and 1974.

the government learned of the existence of two other accounts—one in the name of University Service Station at the First National Bank of Denton, of which the taxpayer was in fact the owner, and the other in his wife's name—it immediately investigated the account controlled by the taxpayer. This account's balance at the start of 1972 was only $442, an amount that could not make any appreciable difference in the government's calculations. No evidence as to the cash balance in Mrs. Normile's account was introduced because the taxpayer's counsel both expressly disclaimed any intention of arguing the existence of such an account and vehemently objected on Fifth Amendment grounds to any court order compelling production of her records.[2]

■ The investigation, however, was adequate without respect to the concession by counsel. The Internal Revenue Service agent questioned Normile and thoroughly investigated every bank account he mentioned. The government was not obliged to bay down rabbit tracks and check every bank in the area in the hope of locating other monetary scents. The taxpayer suggests that, if the investigator had examined every one of the deposit slips in the taxpayer's accounts, he would have found a "lead" to Mrs. Normile's account; but the investigator was not obliged to search out every conceivable link to other evidence and to exhaust every possibility of proof. A full and adequate investigation is required, not a universal probe. *See, e. g., United States v. Beasley,* 5 Cir. 1978, 585 F.2d 796; *United States v. Hiett,* 5 Cir. 1978, 581 F.2d 1199; *United States v. Esser,* 7 Cir. 1975, 520 F.2d 213.

■ The defense also alleges that the government's failure to corroborate Normile's statement that he had only $100 on hand at the beginning of 1972 mandates reversal. With respect to cash on hand in currency the government had no way of determining this save by interrogating the taxpayer. He freely and voluntarily told agent Black that he kept no more than $100 in cash because he did not feel safe having larger amounts around.[3] It was not necessary for the government to seek to corroborate the taxpayer's statement; indeed the inherent secrecy of the cash hoard makes it impossible for any but the keeper to know even of its existence, let alone the amount.

The requirement of corroboration of admissions in tax evasion cases was discussed in *Smith v. United States,* 1954, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192. In that case, the Court said

"The Government may provide the necessary corroboration by introducing substantial evidence, apart from petitioner's admissions, tending to show that petitioner willfully understated his taxable income. This may be accomplished by substantiating the opening net worth directly, . . . [or] by independent evidence concerning petitioner's conduct during the prosecution period, which tends to establish the crime of tax evasion without resort to the net worth computations." 348 U.S. at 157–58, 75 S.Ct. at 199–200.

In *Smith* the Court concluded that substantial expenditures made by the taxpayer and his wife corroborated the net worth admission by tending to show an understatement of income during the years in question.

Here, the government introduced no evidence to corroborate directly the figure given agent Black by Normile. There was, indeed, no evidence available that would confirm it. The government was not obliged to prove a proposition inherently

---

2. We note that the taxpayer offered no evidence that the amount in Mrs. Normile's account was substantial. Although this goes to the sufficiency of the evidence, it is remarkable that the taxpayer seeks reversal on the basis of the government's failure to follow a trail that might have led nowhere.

3. The argument that Normile made the statement under duress because the agent "showed his gun" has no merit. Black himself testified that he never drew his gun, and was not even sure he was wearing it, although that was standard practice. Moreover, Black testified without contradiction that Normile conveyed the same information about cash on hand during a subsequent interview.

impossible to establish. However, there was no evidence showing that this figure was in any way unreliable. All testimony regarding large cash purchases by Normile related to years other than 1972. The $100 figure was repeated to agent Black at a second interview. Moreover, the independent evidence of substantial deposits in his bank accounts, while insufficient in itself to convict him for tax evasion, does tend to corroborate his admission by showing understatement of income.

■ The argument that there was insufficient evidence to show a likely source of income is tendentious if not frivolous; a comparison of the Barney's sales receipts with the summaries prepared by Normile for his accountant provided evidence that Normile sold more in auto parts than he reported as gross income. It was also undisputed that both Normile and his accountant had subtracted the sales tax from the reported sales, resulting in a double deduction. The question whether the relatively large amount of income that Normile was charged with concealing could have been derived from Barney's operations was one for the jury, which obviously gave it credence. The taxpayer's own disclaimer of other sources of income made to agent Black supported the jury's conclusion.

■ The judge excluded the opinion testimony of Normile's ex-partner as to the income producing capability of Barney's on the basis that the ex-partner was not an expert. This appears to have been well within the judge's discretion. Rule 702, Fed.R.Evid. If, however, the decision was erroneous, it was harmless beyond reasonable doubt because the very same observations were offered by another witness, also called by the defense, who was an expert in auto supplies sales in the area and knew Barney's well.

■ In his fastidious, if not bacteriophobic, search for error, counsel also contends that Normile was prejudiced because the 1972 summary of Normile's business bank account offered in evidence by the Government was not supported by the original microfilm records of deposited checks, records used by the agent who prepared the summary in determining that there were no inter-account transfers that might explain some of the deposits. Rule 1006, Fed.R. Evid. Because of the number of bank accounts involved, the generality of the remarks of counsel when offering or objecting to evidence, and the treatment of this issue in the briefs, it is difficult to be entirely certain what happened at the trial and therefore the precise nature of the objection now. Apparently, however, all checks written on those of Normile's personal accounts known to the investigator before the trial began, as well as the deposit slips for the business account in question, were present in the courtroom. These reflected no transfers from a personal account into the business account. The only checks not present were those written on the belatedly-revealed account in the name of University Service Station at the First National Bank of Denton, and these records were presumably available to the defense. Counsel for defendant was offered a continuance to procure any documents not immediately present in the courtroom that he wished to use to impeach the accuracy of the summary, and refused such a continuance. It has not been demonstrated that any inter-account transfers were made, or that any substantial right of Normile was affected by the admission of the summary, Rule 103, Fed.R.Evid. The availability of the original checks and deposit slips satisfied the requirements of Rule 1006, Fed.R.Evid.

■ The prosecutor's remarks during rebuttal argument about the opportunity given the taxpayer to furnish information during the investigation did not constitute a comment on Normile's failure to testify. Moreover, the defense had implied on cross-examination, prior to the exchange on redirect, that Normile had not been given the opportunity to provide any leads. The prosecutor was not obliged silently to suffer an attack that was in essence untruthful. The prosecuting attorney was attempting to demonstrate that the government followed all leads supplied by Normile in establishing

the opening balance of his accounts, the amount of his cash on hand, and the source of the deposits. It was entirely proper for him to do so in order to refute the groundless defense argument.

For these reasons, the conviction is AFFIRMED.