HENRY R. LATEK, APPELLANT, V. K MART CORPORATION, A
FOREIGN CORPORATION, ET AL., APPELLEES.

401 N.W.2d 503

Filed February 27, 1987.   No. 85-532.

Richard F. Welling and Kelle J. Westland of Breeling, Welling, Place & Steier, for appellant.

Albert M. Engles and Jack A. Dike of Hansen, Engles & Locher, P.C., for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

This is an appeal by the plaintiff below from a jury verdict in favor of appellees, K Mart Corporation and others, on a cause of action for false imprisonment. The jury found for appellant on a separate cause of action for assault and battery and returned a verdict in the amount of $15,000. No appeal was taken by K Mart from that verdict, and the disposition of that cause will not be discussed here.

Two principal errors are assigned. First, the trial court erred in refusing to direct a verdict for appellant on the false imprisonment count, and second, the court erred in sustaining an objection to the testimony of Dr. Jerome Sherman, an economist, concerning appellant's diminished capacity to earn in the future.

A review of the facts is necessary. Henry R. Latek was, on

November 23, 1982, a self-employed builder and carpenter. After completing a remodeling project and collecting from the owner, Latek drove first to a banking outlet and then to a K Mart store at 50th and L Streets in Omaha, Douglas County, Nebraska, arriving at 6:45 p.m. He parked his van near the entrance and went immediately to an area of the store in which cassette tapes were offered for sale. As the tape case was secured, he requested assistance. After ascertaining that the desired tape was not available, he left the store.

The K Mart store has a vestibule consisting of a space, on opposite sides of which are inner and outside doors. As he was leaving through the outer doors he heard one of two men say, "Let's get him," whereupon Latek, fearing an assault and conscious of some $500 in his possession, started to run toward his van. Before reaching the van he was tackled, forced to the parking lot surface on his stomach, his arms forced behind his back, and handcuffed. At the same time his face was held to the surface by means of a baton or club held to the back of his neck.

Latek was lifted to his feet and was informed that the two men were security guards. They escorted Latek through the store, handcuffed, to a second-story office, where he was held for a period of 15 to 20 minutes until he was released, a suspected offender having been apprehended in the meantime. Latek claimed injuries to his neck, arm, and leg as a result of the incident. At the time of the incident Latek was dressed in denim jeans and a denim jacket, wore a full beard and mustache, and had nearly shoulder-length hair. He was about 5 feet 7 inches tall.

Charles Gurzick and Joseph Costello were, at the time of these events, observing customers of K Mart from a window overlooking the selling area. It was to this area that Latek was later removed. Gurzick observed a man approximately 5 feet 7 inches in height. The man had a full beard, mustache, and long hair, and was wearing blue jean trousers, a bright blue vest, and a long-sleeved red shirt. Gurzick observed this male tearing the plastic covering from packs of two batteries each and placing the batteries in his trouser pockets or down the front of the trousers. Gurzick dispatched Costello to the sales floor to observe the suspect. He shortly followed. Gurzick and Costello

did not obtain a clear front view of the suspect, but saw him from the rear, and had a fleeting view of the side and front when he passed from their view.

Gurzick and Costello then adjourned to the outside of K Mart and engaged in a conversation. Costello had forgotten what the suspect looked like, and Gurzick reminded him that the suspect resembled a neighbor of Gurzick's. It was at this point Latek walked out of the store and was pursued and apprehended. Before pursuing Latek, Gurzick informed Costello, "I don't think that's him, Joe." According to Gurzick, Costello replied, "That's him man, that's him." After a further protest by Gurzick, Costello said, "It is damn it."

At all times Latek was protesting his innocence and demanding to be searched. No search was made, and no attention was paid to Latek's protests.

As Latek was being escorted through the vestibule, Gurzick's attention was diverted to the checkout lanes immediately in front of the inner doors: "At this time . . . I glanced over at the check-out lanes; and at this point I noticed Mr. Roberts, who was the actual shoplifter. I noticed him going through the check-out lines." Without informing Costello, who held Latek near the door, Gurzick left to apprehend the actual shoplifter. When asked, "Is there a reason why at that time you did not let Mr. Latek go?" Gurzick responded, "At that point I figured it would have caused a lot more trouble and harm if we would have explained the situation in the midst of the floor . . . and stuff." Gurzick was further asked, "Now, by this time you knew Mr. Latek was not the individual that you initially were after?" to which he responded, "Yes."

The actual shoplifter was apprehended, asked to accompany Gurzick to the office, and did so. He was not handcuffed, though Latek, whom Gurzick now knew to be innocent, was led handcuffed through the store to the office, where he was held an additional 15 to 20 minutes, and finally released from the handcuffs and allowed to leave.

Neb. Rev. Stat. § 29-402.01 (Reissue 1985) states:

> A peace officer, a merchant, or a merchant's employee who has probable cause for believing that goods held for sale by the merchant have been unlawfully taken by a

person and that he can recover them by taking the person into custody may, for the purpose of attempting to effect such recovery, take the person into custody and detain him in a reasonable manner for a reasonable length of time. Such taking into custody and detention by a peace officer, merchant, or merchant's employee shall not render such peace officer, merchant, or merchant's employee criminally or civilly liable for slander, libel, false arrest, false imprisonment, or unlawful detention.

Assuming, as we must do for the purposes of this case, that the statements of Gurzick and Costello constituted probable cause for the detention of Latek, we are faced with the acknowledged fact that Gurzick knew that he had apprehended and detained an innocent person. Nevertheless, he did not inform Costello of that fact, and detained Latek for a substantial period of time, handcuffed.

The record establishes clearly that a detention arguably lawfully made was continued for an unreasonable time, i.e., after the detainers knew that their suspicions were groundless and the apprehension a mistake. Such further detention was clearly unreasonable, and the judge was in error in not so holding. See *Hardin v. Barker's of Monroe, Inc.*, 336 So. 2d 1031 (La. App. 1976).

Appellant argues that the trial court's refusal to receive the testimony of Dr. Sherman was erroneous. In *Clearwater Corp. v. City of Lincoln*, 202 Neb. 796, 277 N.W.2d 236 (1979), we articulated the rule that expert testimony should not be received if it appears that the witness is not in possession of such facts as will enable him to express a reasonably accurate conclusion, and where the opinion is based on the facts shown not to be true the opinion lacks probative value. Dr. Sherman's opinion on Latek's decreased earning capacity was based on the assumption of a permanent 10-percent disability of the body as a whole. The only medical witness testified the disability was not permanent. The trial court was correct in excluding the testimony.

We reverse and remand for further proceedings in conformity with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.