MERTISHA KROEGER, APPELLANT, V. FORD MOTOR COMPANY, APPELLEE.

527 N.W.2d 178

Filed February 3, 1995.  No. S–93–334.

324

James E. Schaefer, of Gallup & Schaefer, for appellant.

William J. Brennan and Joseph A. Jordano, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., and John M. Thomas for appellee.

HASTINGS, C.J., CAPORALE, FAHRNBRUCH, WRIGHT, and CONNOLLY, JJ.

CONNOLLY, J.

Mertisha Kroeger appeals the directed verdict entered against her by the Douglas County District Court in her product liability action against the appellee, Ford Motor Company (Ford). Kroeger's claim arose out of a one-car accident in which she was seriously injured while driving an automobile manufactured by Ford. Kroeger sued Ford under the theories of strict liability, negligence, breach of express warranty, and breach of implied warranty. At the end of Kroeger's case in chief, Ford made a motion for directed verdict, which the trial court sustained. For the reasons stated below, we affirm the trial court's decision.

## I. FACTUAL BACKGROUND

### 1. THE VEHICLE

Kroeger purchased a new 1986 Ford Taurus automobile on January 8, 1986, from Atchley Ford in Omaha. The Taurus was manufactured by the appellee, Ford. Kroeger began experiencing mechanical problems with the vehicle almost immediately. She took the car back to Atchley on several occasions for repairs. After each repair, Kroeger testified, she was assured by Atchley that the car had been repaired, that nothing was wrong with the car when she brought it in, or that whatever she was complaining of either could not be repaired or constituted a regular characteristic of the Ford Taurus.

After 4 months and several repairs by Atchley mechanics, Kroeger began experiencing problems with the power steering belts. Kroeger complained to the mechanics at Atchley that something was cutting or breaking the power steering belts and that when Kroeger executed a right turn in the vehicle, she would have to pull hard on the steering wheel to get it to come

back after the turn. Various mechanics at Atchley adjusted and replaced the power steering belts on several occasions. They also replaced the pulley at least twice and attempted to adjust the pulley and align it with the power steering belts. During this period of time, Atchley mechanics also performed numerous other repairs, including aligning the front end and repairing the brakes, catalytic converter, air conditioner, and dashboard lights.

· Despite the repeated trips to Atchley, Kroeger continued to experience problems with her car. In October 1986, when the car had been driven approximately 12,000 miles, Kroeger began taking the vehicle to McFayden Ford for service. During the month of October, McFayden's mechanics performed a number of repairs on Kroeger's Ford Taurus, including checking and adjusting various belts and disassembling the steering wheel to service the cruise control.

On November 18, McFayden's mechanics installed a new power steering rack. One of Kroeger's expert witnesses, Roy Burdick, concluded that whoever replaced the steering rack "hadn't finished his job and sent the car out with what I would say [was] faulty workmanship." Burdick believed, among other things, that the mechanics had reassembled the vehicle improperly using air wrenches instead of torque wrenches. He believed that McFayden's mechanics had failed to tighten various bolts and locknuts, creating a dangerous condition.

In late November, the car began making a "clunking" noise under the hood. Kroeger's husband, Robert Kroeger, opened the hood while his brother-in-law turned the steering wheel. Kroeger's husband saw the engine move from side to side. He contacted McFayden, which sent two mechanics, Keith Kruse and Robert Fredlund, to pick up the vehicle. Kruse testified in his deposition that he heard the clunking noise and saw the unusual movement of the engine. The vehicle was taken back to McFayden, where the mechanics tightened some of the bolts and replaced the power steering belts and the pulley.

## 2. THE CRASH

After driving the Ford Taurus home from the last repair, Kroeger testified, she refused to drive the vehicle again.

However, on January 19, 1987, Kroeger agreed to pick up her mother–in–law and take her to a doctor's appointment at Immanuel hospital. Kroeger used the Ford Taurus on that occasion, and it was during the trip to the hospital that the accident in the instant case occurred.

Kroeger picked up her mother–in–law in Blair, Nebraska, and brought her to Omaha. The crash occurred on 72d Street in Omaha as Kroeger was driving toward the hospital. At the point where the accident occurred and in the surrounding area, 72d Street is a four–lane street, with two lanes containing northbound traffic and two lanes containing southbound traffic. Kroeger was traveling southbound on 72d Street in the west (right) lane. As the vehicle approached the hospital, Kroeger began to move toward the east (left) southbound lane so that she could execute a left turn to enter the hospital parking lot. At the point where Kroeger began to move the vehicle into the left lane and where the front left wheel was in the left lane, the steering wheel whipped out of her hands. Kroeger sensed that she had lost control of the vehicle and pressed the brake pedal to the floor. The brake was ineffective.

An eyewitness to the accident, Loyal Bridges, noticed the Kroeger vehicle as he was traveling northbound in the right–hand lane on 72d Street. Bridges testified that his attention was drawn to the Kroeger vehicle because he noticed that Kroeger was moving her hands erratically. Bridges saw the Kroeger vehicle move toward the west curb on 72d Street. Both tires on the passenger side of the Kroeger vehicle climbed up onto the curb. The Ford Taurus traveled a short distance with the passenger side tires over the curb and then came back onto 72d Street and headed toward Bridges' vehicle. Bridges testified that he brought his automobile to a stop because he was unsure where the Kroeger vehicle was going. The Kroeger vehicle reached the left–hand southbound lane of 72d Street near the median, then turned to the right and went over the embankment on the west side of 72d Street. Bridges testified that he radioed his employer and instructed the people there to call for help.

### 3. THE TRIAL

Kroeger brought the instant action against Atchley,

McFayden, and Ford individually, without alleging an agency relationship between Ford and the other defendants. Prior to trial, Kroeger reached a settlement agreement with Atchley and McFayden. At trial, with Ford as the only remaining defendant, Kroeger presented the testimony of Bridges and two expert witnesses, Burdick and Dr. William Weins. Burdick was of the opinion that some of the repairs performed by Atchley and McFayden were inadequate and constituted potential causes of the accident in the instant case. Dr. Weins was called by Kroeger to testify as to another potential cause of the accident— a phenomenon known as temporary loss of assist (TLA). However, Dr. Weins was not allowed to offer his opinion as to causation because the trial court found that there was insufficient foundation for Dr. Weins' opinion.

In addition to Bridges, Burdick, and Dr. Weins, Kroeger also called a number of mechanics from Atchley and McFayden to testify about the repairs performed on Kroeger's Ford Taurus. Police officers who investigated the accident scene testified as to their observations. Kroeger herself testified regarding the accident and the injuries she sustained.

At the end of Kroeger's case in chief, Ford made a motion for directed verdict, which the trial court granted. Kroeger appeals from that decision.

## II. ASSIGNMENTS OF ERROR

Kroeger argues that the trial court erred in (1) not submitting her case to the jury based on Kroeger's own testimony that her Ford Taurus was defective, (2) sustaining Ford's motion in limine and refusing to admit evidence collected by the National Highway Transportation Safety Administration (NHTSA) concerning TLA, (3) failing to admit into evidence TLA complaints verified by Ford, and (4) refusing to allow Dr. Weins to offer an opinion as to causation.

## III. STANDARD OF REVIEW

In reviewing the action of a trial court, an appellate court must treat a motion for directed verdict as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have

every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. In order to sustain a motion for directed verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion from the evidence. *Larsen v. First Bank*, 245 Neb. 950, 515 N.W.2d 804 (1994); *Rohde v. Farmers Alliance Mut. Ins. Co.*, 244 Neb. 863, 509 N.W.2d 618 (1994); *Wilson v. Misko*, 244 Neb. 526, 508 N.W.2d 238 (1993).

In all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in the admissibility of evidence. *Terry v. Duff*, 246 Neb. 524, 519 N.W.2d 550 (1994); *McDermott v. Platte Cty. Ag. Socy.*, 245 Neb. 698, 515 N.W.2d 121 (1994); *Vacanti v. Master Electronics Corp.*, 245 Neb. 586, 514 N.W.2d 319 (1994). The admissibility of evidence is reviewed for abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *Sindelar v. Canada Transport, Inc.*, 246 Neb. 559, 520 N.W.2d 203 (1994); *Kudlacek v. Fiat S.p.A.*, 244 Neb. 822, 509 N.W.2d 603 (1994).

## IV. ANALYSIS

### 1. DIRECTED VERDICT IMPROPER BASED ON KROEGER'S TESTIMONY

As her first assignment of error, Kroeger contends that the trial court erred in directing a verdict in Ford's favor. Kroeger argues that her testimony and the testimony of other witnesses, without the opinion of Dr. Weins, were enough to raise genuine questions of fact that should have been submitted to the jury. At trial, Kroeger testified that in spite of her efforts to control her vehicle, she was unable to do so because the vehicle's steering wheel was inexplicably ripped from her hands while she was driving down 72d Street. All the other witnesses, except Dr. Weins, testified with regard to the events at the accident scene, the repairs conducted by Atchley and McFayden, and the various mechanical failures which may have caused the instant accident.

Without Dr. Weins' expert opinion, the cause of the failure of the steering system was based entirely upon circumstantial evidence. According to the testimony of Kroeger's expert witness Burdick, a number of the potential causes of this accident could be attributed to the mechanical repair work performed by Atchley and McFayden. However, the record reflects that Kroeger reached a settlement agreement with Atchley and McFayden. It is established law in Nebraska that settlement with an agent constitutes settlement with the principal, no matter what the parties may have intended. *McCurry v. School Dist. of Valley*, 242 Neb. 504, 496 N.W.2d 433 (1993). Thus, as to any liability which may have been attributed to Atchley or McFayden, Ford has effectively been released by Kroeger.

Circumstantial evidence is not sufficient to sustain a verdict depending solely thereon for support, unless the circumstances proved by the evidence are of such a nature and so related to each other that the conclusion reached by the jury is the only one that can fairly and reasonably be drawn therefrom. *Rohde v. Farmers Alliance Mut. Ins. Co., supra.* When there is direct evidence sufficient to refute all theories of the cause of damage except the one established solely by circumstantial evidence, there then remains but one inference deducible from the facts under the circumstances, and it is within the province of the trier of fact to make this determination. *Id.* However, where several inferences are deducible from the facts presented, a plaintiff does not sustain her position by reliance on only the inferences which would entitle her to recover. *Anderson v. Farm Bureau Ins. Co.*, 219 Neb. 1, 360 N.W.2d 488 (1985); *Popken v. Farmers Mutual Home Ins. Co.*, 180 Neb. 250, 142 N.W.2d 309 (1966). A directed verdict is required if more than one conclusion can reasonably be drawn from the circumstantial evidence presented. See *Anderson v. Farm Bureau Ins. Co., supra.*

Clearly, the record in the instant case reasonably supports more than one conclusion as to the cause of Kroeger's accident. Kroeger presented abundant evidence which tended to prove that the crash may have been caused by Atchley's or McFayden's negligence. As a result of the settlement agreement between

Kroeger and Atchley and McFayden, Ford cannot be held liable for the negligence of either Atchley or McFayden. Thus, Kroeger failed to provide direct evidence refuting all the potential causes of the accident for which Ford cannot be held liable. The trial court did not err in refusing to submit Kroeger's case to the jury based on the evidence Kroeger presented.

## 2. TRIAL COURT'S REFUSAL TO ALLOW EVIDENCE COLLECTED BY THE NHTSA AND TLA COMPLAINTS VERIFIED BY FORD

Kroeger's second and third assignments of error appear to refer to the same piece of evidence: the last three pages of what was offered as exhibit 105. Those three pages contained nine brief summaries of accidents which were allegedly caused by locking or binding in the steering system of 1986 Ford Taurus or Sable automobiles. Kroeger attempted to introduce the accident summaries as part of a "concern analysis report" produced by Ford which identified and addressed the company's concerns over the TLA problem. The trial court admitted into evidence as exhibit 105 the bulk of the concern analysis report, but excluded the accident summaries pursuant to Ford's motion in limine and objection at trial.

Ford contends that the trial court properly excluded the accident summaries because they constituted inadmissible hearsay. In response, Kroeger implicitly concedes that the accident summaries are hearsay, but argues that they were admissible under the hearsay exception in Neb. Rev. Stat. § 27-803(7) (Reissue 1989):

> Subject to the provisions of section 27-403, the following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (7) Upon reasonable notice to the opposing party prior to trial, records, reports, statements or data compilations made by a *public official or agency of* facts required to be observed and recorded pursuant to a duty imposed by law, unless the sources of information or the method or circumstances of the investigation are shown by the opposing party to indicate a lack of trustworthiness.

(Emphasis supplied.)

From the record, it is clear that the accident summaries in question were prepared by Ford, not the NHTSA. The fact that the NHTSA requested Ford to compile the accident summaries is of no consequence. Compilations prepared by private entities at the direction of a federal agency do not constitute the "facts required to be observed and recorded pursuant to a duty imposed by law" contemplated by § 27–803(7). Nothing in the accident summaries indicates that representatives of the NHTSA observed anything in compiling the summaries. Rather, it appears that the NHTSA received notice of a problem with certain Ford automobiles and requested Ford to conduct its own investigation and report the results to the NHTSA. The information compiled by Ford does not fall within the hearsay exception in § 27–803(7), and the trial court properly excluded the accident reports.

### 3. TRIAL COURT'S REFUSAL TO ALLOW DR. WEINS TO OFFER AN OPINION AS TO CAUSATION

In her final assignment of error, Kroeger contends that the trial court erred in refusing to allow Kroeger's expert witness Dr. Weins to render his opinion regarding the cause of Kroeger's accident. The trial court afforded Kroeger several opportunities to lay the proper foundation for Dr. Weins' opinion, including allowing Kroeger to recall Dr. Weins the day after her first unsuccessful attempt to elicit his opinion. However, Kroeger failed to establish sufficient foundation, and the trial court refused to allow Dr. Weins to state his opinion. Had Dr. Weins been allowed to give his opinion, he would have stated that the accident was caused by the TLA defect.

The trial court found that the foundation for Dr. Weins' testimony was inadequate because Dr. Weins attempted to base his opinion on a factual scenario which was substantially different from what occurred during Kroeger's accident. During direct examination, Dr. Weins stated that an important factor in his analysis of the instant case was the effect that TLA would have on a vehicle that struck a curb at the time that the TLA effect manifested itself. Soon after that testimony was elicited, Kroeger's trial counsel asked Dr. Weins to offer an opinion as to the cause of the accident. The trial court sustained Ford's

objection as to lack of foundation and noted that nothing in the record reflected that Kroeger had struck a curb.

Later in the trial, Kroeger recalled Dr. Weins in an attempt to lay the proper foundation for Dr. Weins' opinion. During that direct examination, Dr. Weins stated that he had relied on an assortment of testimony and exhibits in arriving at his conclusion. When asked if he could correlate the facts of the accident to the TLA defect, Dr. Weins stated, "Yes, I believe I can." However, Dr. Weins continued to assert his opinion based on the theory that the Kroeger vehicle struck a curb at the time that the TLA defect manifested itself. As support for that factual conclusion, Dr. Weins cited the testimony of eyewitness Bridges.

The flaw in the foundation for Dr. Weins' opinion is that when Kroeger's testimony is compared with Bridges' eyewitness account, Dr. Weins' "TLA-curb" theory becomes inapplicable to the instant case. Kroeger testified that the steering wheel jumped out of her hands as she began to execute a lane change to the *left*. Nothing in the record supports an inference that Kroeger struck the curb on her right prior to beginning the move to the left lane. In fact, Kroeger testified that she had full control of her vehicle when she began to move toward the left lane. As the vehicle entered the left lane, the steering wheel began to move back and forth uncontrollably. Bridges testified that he saw the Kroeger vehicle move from the road onto the curb in the right lane. That move to the right, given the facts presented by the record in the instant case, occurred *after* Kroeger had already lost control of the vehicle.

The record does not support a theory based on the premise that the TLA effect coincided with Kroeger's vehicle striking the curb. According to Dr. Weins' testimony, the TLA defect would have caused Kroeger to oversteer to the left (since she was moving the vehicle in that direction), not to the right. Oversteering to the left would clearly not cause a vehicle to jump onto the curb bordering the right-hand lane. The only reasonable reading of the record reveals that Kroeger had already lost control of the vehicle when it ran onto the curb.

A trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only

when there has been an abuse of discretion. *McDonald v. Miller*, 246 Neb. 144, 518 N.W.2d 80 (1994). The soundness of a trial court's decision regarding the admissibility of expert testimony depends upon the qualifications of the witness, the nature of the issue on which the opinion is sought, the foundation laid, and the particular facts of the case. *Coppi v. West Am. Ins. Co., ante* p. 1, 524 N.W.2d 804 (1994). Expert testimony should not be received if it appears that the witness is not in possession of such facts as will enable him to express a reasonably accurate conclusion, and where the opinion is based on facts shown not to be true, the opinion lacks probative value. *Latek v. K Mart Corp.*, 224 Neb. 807, 401 N.W.2d 503 (1987); *Clearwater Corp. v. City of Lincoln*, 202 Neb. 796, 277 N.W.2d 236 (1979). Since there was no basis in fact to support Dr. Weins' opinion, the trial court properly refused to accept it. See *Green v Jerome–Duncan Ford*, 195 Mich. App. 493, 491 N.W.2d 243 (1992). See, also, *Priest v. McConnell*, 219 Neb. 328, 363 N.W.2d 173 (1985).

## V. CONCLUSION

Kroeger's circumstantial evidence, without the expert opinion of Dr. Weins, was insufficient to overcome Ford's motion for directed verdict because Kroeger failed to refute with direct evidence the other potential causes of the accident for which Ford could not be held liable. The trial court properly excluded the accident summaries submitted to the NHTSA by Ford because those summaries constituted inadmissible hearsay. Likewise, the trial court did not abuse its discretion in finding that there was insufficient foundation to allow Dr. Weins to state his expert opinion as to the cause of the accident.

AFFIRMED.

WHITE and LANPHIER, JJ., not participating.