NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 11-4577 and 11-4578
_____

UNITED STATES OF AMERICA

v.

TROY DORSEY,
Appellant
_____

UNITED STATES OF AMERICA

v.

MONNIE DORSEY,
Appellant
_____

Appeals from the United States District Court
for the District of Delaware
(D.C. Criminal Nos. 1-10-cr-00091-001 and 002)
District Judge: Honorable Sue L. Robinson
_____

Submitted Under Third Circuit LAR 34.1(a)
September 21, 2012

Before: SLOVITER, RENDELL and HARDIMAN, Circuit Judges

(Opinion Filed: September 24, 2012)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Appellants Troy and Monnie Dorsey appeal their convictions on charges of conspiracy to defraud the IRS in violation of 18 U.S.C. § 371, filing false tax returns for tax years 2004 through 2006 in violation of 26 U.S.C. § 7206(1), and, as to Troy Dorsey only, structuring cash deposits to avoid tax reporting requirements in violation of 31 U.S.C. § 5324(a)(3) and (d)(2). For the reasons set forth below, we will affirm the Dorseys' convictions.[1]

## I.

Troy and Monnie Dorsey, the owners and operators of the Day School for Children in New Castle, Delaware, reported adjusted gross incomes of $15,697, $3,742, and $10,341 on their joint federal income tax returns for the years 2004, 2005, and 2006, respectively. The evidence presented at trial showed that the Dorseys operated the Day School primarily on a cash basis: requesting at least some parents to pay tuition in cash, paying teacher salaries in cash, refusing to issue tax forms reflecting income paid to teachers, and, in some cases, encouraging teachers not to file tax returns or report income they earned from the school.

At the same time, the Dorseys possessed large quantities of cash: the government introduced bank records showing that, from 2004 to 2006, Troy Dorsey deposited over $346,000 in cash into the couple's account. The deposits all were made in increments of less than $10,000, i.e., below the threshold that triggers a bank's obligation to report

---

[1] We have jurisdiction to review the Dorseys' final orders of conviction under 28 U.S.C. § 1291.

2

suspicious currency transactions to the IRS.  In late 2007, the Dorseys used postal service money orders to make two deposits totaling almost $40,000 towards the purchase of a $716,000 house.  At trial, the government offered, and the District Court admitted:  (1) a buyer's affidavit the Dorseys completed in September 2007 in connection with the home purchase, certifying that they had a combined annual income of $168,000 (compared to the $10,341 in adjusted gross income the Dorseys reported on their 2006 tax return), and (2) copies of the small-denomination (mostly $1,000) postal money orders the Dorseys used to make deposits on the house.[2]

## II.

On appeal, the Dorseys challenge the sufficiency of the evidence supporting their conspiracy and tax-fraud convictions; urge that trial testimony by the IRS's Special Agent that was arguably inconsistent with the agent's testimony at sentencing fatally undermines those convictions; and contend that the District Court abused its discretion in admitting the evidence related to their 2007 house purchase.  Troy Dorsey also argues that the government improperly used the postal money orders to prove the intent element of the structuring charges.  We reject all of these arguments.[3]

---

[2]  The record includes two different forms the home builder filed with the IRS reporting cash payments from the Dorseys of over $10,000.  The first shows that the Dorseys used postal money orders purchased over five days from eight different post offices to make an initial deposit of $20,372.  The second shows that the Dorseys used postal money orders purchased over six days from six different post offices to make a second, $18,000 deposit.

[3]  Because the Dorseys did not file a timely motion for judgment of acquittal, we review whether sufficient evidence supports the conspiracy and tax-fraud convictions for plain error.  *See United States v. Powell*, 113 F.3d 464, 466-67 (3d Cir. 1997).  We review the

**A.**

First, the Dorseys urge that the "bank deposit method" the government used to prove that they understated their income was flawed because the government did not sufficiently establish the Dorseys' "starting cash on hand," and because the evidence did not support the government's estimate of the amount of cash generated by the Day School.[4]

For many years courts have held that, when using the bank deposit method of proof, the government must show that the defendant had a lucrative business, that he made periodic and regular cash deposits into his bank accounts, that the difference between deposits and withdrawals reflected income, and that there was a substantial understatement in reporting that income. *See United States v. Boulware*, 384 F.3d 794, 811 (9th Cir. 2004) (quoting *Gleckman v. United States*, 80 F.2d 394, 399 (8th Cir. 1935)); *United States v. Venuto*, 182 F.2d 519, 521 (3d Cir. 1950). It is well settled that the government need not prove the exact amount of a deficiency, as long as it establishes that the defendant's understatement is substantial. *Boulware*, 384 F.3d at 811.

As part of this process, the government must establish the defendant's starting cash on hand with "reasonable certainty." *United States v. Normile*, 587 F.2d 784, 785 (5th Cir 1979). To do so, it must "conduct an adequate and full investigation,"

_____

District Court's admission of the evidence related to the Dorseys' home purchase for abuse of discretion. *United States v. Mathis*, 264 F.3d 321, 326 (3d Cir. 2011).

[4] The Dorseys do not challenge the basic facts underlying their convictions, i.e., the amounts they reported on their 2004, 2005, and 2006 tax returns and the number and amount of cash deposits they made into their bank accounts during that time.

accounting for any non-income related deposits, *Boulware*, 384 F.3d at 811, and looking into all reasonably verifiable, non-taxable sources of cash the defendant identifies, *United States v. Boulet*, 577 F.2d 1165, 1168-69 (5th Cir. 1978). The government's obligation to "negate other sources of non-taxable income" is "satisfied by proof of an adequate investigation that did not disclose non-taxable sources." *Id.* at 1168.

Here, the government's thorough investigation did not disclose any source of cash other than income from the Day School. IRS Special Agent Thomas Sorrentino began his investigation by reviewing bank records both from the Dorseys' personal account and the Day School's account. Sorrentino sought financial records for the Day School through two grand-jury subpoenas and a search warrant, but none were produced in response to the subpoenas or found after a search of the premises. Sorrentino also interviewed Troy Dorsey, who offered several conflicting explanations for the cash deposits. Dorsey first stated that the cash was a gift from his father-in-law. But after his wife contradicted that account, stating that her father never had that kind of money, Troy changed his story, claiming the cash was earnings he had accumulated since age fourteen and kept on his person, at his house, and in a safe-deposit box at the bank.

After further investigation, Sorrentino found no evidence to support Dorsey's explanations. He determined that the Dorseys' father-in-law could not have been the source of the cash deposited in the Dorseys' account, in part because of Monnie's admission during the interview, and in part because the Dorseys received only $35,000 (paid by check, not in cash) from the father-in-law's estate. Bank records indicated that Troy did not open a safe-deposit box until 2006, after much of the cash at issue had

5

already been deposited into the Dorseys' account. Finally, Troy's past earning statements offered no evidence of any income paid in cash and, in all events, was less than the amount of cash deposits Dorsey made between 2004 and 2006.[5]

Viewing the record in the light most favorable to the government, as we must, *see United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998), we conclude that ample evidence supported the jury's conclusion that the Dorseys were guilty of conspiracy to defraud the IRS and of willful submission of false tax returns for the 2004–2006 tax years. The Dorseys have not established any error in this regard, let alone an error that is plain.

**B.**

The Dorseys also contend that an inconsistency between Special Agent Sorrentino's trial testimony and his testimony at sentencing improperly prejudiced the jury and undermines their convictions. Here again, the Dorseys have not established plain error.

At trial, Sorrentino testified that he gave the Dorseys "credit" for certain purported business expenses in calculating the amount of unreported gross business receipts from the Day School for each of the three tax years at issue. And, in fact, it appears that Sorrentino gave the Dorseys "credit" for those expenses by reducing his calculation of the Day School's gross business income by the amount of reimbursement checks made

---

[5] Although it was not part of the government's affirmative case, we note that Troy Dorsey testified at trial. When asked, he could not identify the amount of cash he deposited over the three-year period in question, and he did not offer any alternative, non-taxable explanation of its source.

6

out to the Dorseys.  In calculating the tax loss caused by the Dorseys' understatements for sentencing purposes, however, Sorrentino did not give the Dorseys "credit" for those expenses by reducing the gross business income by the amount of the reimbursements. Sorrentino testified that the record did not support a conclusion that the reimbursements, which included, among other things, restaurant meals, payments for a Mercedes Benz, and non-school-related travel, reflected legitimate business expenses.

We agree with the District Court that Sorrentino's trial testimony, which suggested that he was treating the reimbursements as legitimate business expenses, was confusing. But this confusion does not undermine the Dorseys' convictions in any way.  As noted above, at trial, the government needed only to prove that the Dorseys understated their income, and that the understatement was substantial.  The confusion regarding Sorrentino's treatment of reimbursements relates solely to the calculation of the tax loss arising from the Dorseys' conduct, which is purely a sentencing issue;[6] it does not bear at all on the questions whether the Dorseys understated their income from the Day School or whether that understatement was substantial.  Accordingly, we will not reverse the Dorseys' convictions on this basis.

## C.

The Dorseys also challenge the District Court's admission of documents pertaining to their house purchase.  The Dorseys argue the documents were inadmissible because they pertained to acts that occurred after the last overt act of conspiracy alleged

---

[6]  Notably, the Dorseys do not challenge their sentences on appeal.  This is likely because the District Court rejected Sorrentino's calculation and gave the Dorseys credit for the challenged expenses, resulting in a smaller tax loss and, presumably, lighter sentences.

in the complaint. That argument fails because, regardless of whether the documents were relevant to the conspiracy charges (an issue we do not address), the documents plainly are relevant to the tax-fraud charges. Therefore, the District Court did not abuse its discretion in admitting them.

Among other things, the documents are probative of the Dorseys' willfulness in understating income on their 2006 tax return. That the Dorseys certified that their combined annual income from the Day School was $168,000 in September 2007 strongly suggests that they knew the $10,341 annual income they claimed on their 2006 tax return (which they filed five months earlier, in April 2007) was false. *See United States v. DeMuro*, 677 F.3d 550, 558-59 (3d Cir. 2012) (holding evidence of personal spending can be relevant to prove the defendant acted willfully; it can be relevant to the jury's assessment of the defendant's willfulness; and it is also probative of guilt). The Dorseys' payment of deposits on the house by multiple postal money orders in small denominations, rather than a lump-sum payment from a bank, also supports the notion that the Dorseys sought to hide large amounts of cash from the IRS.

**D.**

Lastly, Troy Dorsey argues that the government improperly relied on the postal money orders to prove the intent element of his structuring charges. We disagree.

To support his argument, Troy cites only the following brief excerpt of the government's closing argument, to which he did not object: "I would suggest to you, again, you're trying to stay as invisible as possible, because you know you haven't

reported your business income, you don't intend to report your business income, and you don't want the IRS to find out about it, which leads us back to structuring."

In context, the portion of the government's argument quoted above suggests that the government intended to argue that Troy structured the cash deposits into the couple's bank account as part of the Dorseys' overall attempt to hide their income from the government, not that the Dorseys' later use of postal money orders proved that Troy's earlier bank deposits were structured to evade reporting requirements. As discussed above, the District Court properly admitted the postal money orders as evidence of the Dorseys' overall scheme to hide funds from the IRS. Troy has not identified any reversible error here.

## III.

For the foregoing reasons, we will affirm the judgments of conviction.